United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL L. GUIDRY,<br><br>    Plaintiff,<br><br>  v.<br><br>MARINE ENGINEERS'<br>BENEFICIAL ASSOCIATION,<br><br>    Defendant.<br>_____/ | No. C 11-05347 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Plaintiff Paul Guidry accuses his union of racial discrimination. Pursuing this suit *pro se*, he alleges violations of federal and state non-discrimination laws and claims intentional infliction of emotional distress ("IIED"). Defendant Marine Engineers Beneficial Association ("MEBA") moves to dismiss Guidry's claims under Fed. R. Civ. P. 12(b)(6).

For the reasons discussed below, the Court GRANTS the Motion. Because Guidry could potentially allege more facts to cure the deficiencies in his complaint, however, the Court will grant him leave to amend his federal law claim.

## I. BACKGROUND

This suit arises from a missed opportunity and a series of miscommunications.

Guidry works out of Oakland as a MEBA-represented marine engineer. Compl. (dkt. 1) ¶¶ 1-2. In mid-November 2010, he sought a job on the Overseas Cascades, a merchant

1   vessel based in Brazil, and he submitted his required work-visa application. Id. ¶ 9. But
2   Guidry applied for the job one month after another, higher-paid engineer based in Boston had
3   already put in for it. Id. ¶¶ 7-9. This other man got the job, even though "it is unheard of" to
4   place an engineer with a higher pay classification into a lower-paying position. Id. ¶ 17.

5       Soon after the other engineer took the job, a union official told Guidry that he did not
6   think that the position had been filled. Id. ¶ 14. A shipping company official, however, told
7   Guidry that the position had indeed been filled but that Guidry "might" be able to take
8   another job on the ship beginning January 21, 2011. Id. ¶ 13. This possibility fell through,
9   however, when Guidry heard from a union official that Guidry's visa application was
10  incomplete. Id. ¶ 24. This is despite the fact that Guidry remembers signing the form;
11  further, the union would not have allowed Guidry to submit incomplete paperwork. Id. In
12  any event, Guidry could have shipped off to the Overseas Cascade by January 21 if the
13  shipping company – which is not a defendant in this case – worked with Guidry to submit a
14  new or completed application by January 17. Id. ¶ 25. Through it all, a union official failed
15  to ask the shipping company why it did not update the official about the other man's hiring.
16  Id. ¶ 30. These failures and/or omissions led Guidry to believe that he had the job, which in
17  turn meant that he did not – and by union rules, could not – pursue other work assignments.
18  Id. ¶ 33. Guidry stopped pursuing the position in early February 2011 and filed a grievance.
19  Id. ¶¶ 27-28.

20      After unsuccessfully pressing a complaint before the Equal Employment Opportunity
21  Commission ("EEOC"), Guidry sued. Id. ¶ 32. He argues that MEBA's conduct violated
22  Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing
23  Act ("FEHA"), California Government Code § 12940, *et seq*. Id. ¶ 2. He also claims that the
24  conduct was "designed to [and did] inflict emotional distress" upon him. Id. In addition to
25  the above assertions, Guidry bases his discrimination claims on these statements:

26
> . . . MEBA and [the shipping company] worked together to keep me off the Overseas Cascade once [company] officials received my picture and could tell my race: African-American (Black), because other personnel on that ship did not wish to work with African-American sailors. . . .

27
28

2

> The conduct of MEBA was discriminatory with respect to my race.  Defendants would not have taken any of the actions detailed [above] . . . had I not been African-American (Black). . . .[1]

Id. ¶¶ 30, 31.

MEBA now moves to dismiss.  Mot. (dkt. 4) at 2.  It raises two arguments.  First, MEBA contends that federal law preempts Guidry's state law claims because the claims (1) effectively assert a breach of the duty of fair representation and/or (2) require substantial interpretation of the union's collective bargaining agreement ("CBA") with the shipping company for which Guidry tried to work.  Second, MEBA argues that Guidry has failed to state a legally cognizable federal discrimination claim.

## II.  LEGAL STANDARD

When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Further, when a plaintiff appears *pro se*, as Guidry does here, his complaint must "be liberally construed" and be "held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

Finally, if a court grants a motion to dismiss, it generally must allow the plaintiff leave to amend, unless amendment would be futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  The question of futility turns on whether the complaint could be amended to cure the defect "without contradicting any of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## III.  DISCUSSION

MEBA contends that federal law preempts Guidry's FEHA and IIED claims, either because the claims are effectively the same as an alleged breach of the union's duty of fair representation or because Section 301 of the Labor Management Relations Act ("LMRA") applies.  Mot. at 5.  MEBA then seeks to dismiss the Title VII claim by arguing that Guidry

---

[1] Guidry sets forth similarly conclusory allegations for each claim.  See Compl. ¶¶ 38-39 (Title VII claims), 42-43 (FEHA), 46-47 (IIED).  These will be discussed below.

3

has not pleaded sufficient facts. Id. at 10. As explained below, the Court agrees with both arguments.

### A.     Preemption

MEBA attacks Guidry's state law claims by arguing that they derive from (1) the shipping company's failure to abide by the CBA with MEBA and (2) from MEBA's alleged failure to properly represent him as a union member. Mot. at 5. MEBA contends that such grounds provide two bases for federal preemption. Id.

#### 1.     Duty of Fair Representation

MEBA first asserts that the state law claims essentially constitute allegations that the union has breached its duty of fair representation. Mot. at 5. If this is so, the Court must dismiss Guidry's FEHA and IIED claims as preempted. Id.

The duty of fair representation implicitly derives from Section 9(a) of the National Labor Relations Act ("NLRA"), which grants unions the "exclusive power to represent all employees of the collective bargaining unit." Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local 14, 453 F.2d 1018, 1021-22 (9th Cir. 1972). This duty requires the union "to serve the interests of all members without hostility or discrimination toward any . . . ." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998) (citing Vaca v. Sipes, 386 U.S. 171, 177 (1967)). Because the duty derives from the NLRA, federal law governs claims for its breach. Vaca, 386 U.S. at 177 .

Guidry has not specifically alleged that MEBA breached this duty. MEBA claims, however, that the Court "must look to the conduct at the heart of the controversy" to see if Guidry has effectively masked a federal claim with state law labels. Mot. at 6 (quoting Madison v. Motion Picture Set Painters, Local 729, 132 F. Supp. 2d 1244, 1257 (C.D. Cal. 2000)).

The Ninth Circuit has not determined whether such a re-characterization of a plaintiff's state law claims is required when the claims challenge a union's representational activities. See Madison, 132 F. Supp. 2d at 1256-57. The First Circuit, however, has. It has held that state law claims are preempted "whenever a plaintiff's claim invokes rights derived

4

from a union's duty of fair representation." BIW Deceived v. Local S6, 132 F.3d 824, 830 (1st Cir. 1997). This derivation, it further held, may be a claim "garbed in state-law raiment [that nonetheless] sufficiently asserts a claim implicating the duty of fair representation." Id. at 831-32. Several district courts within this circuit have followed the First Circuit's lead. See, e.g., Madison, 132 F. Supp. 2d at 1257; Swain v. DYWIDAG-Sys. Int'l USA, Inc., No. 09-01096, 2009 WL 1578918, at *5 (N.D. Cal. June 4, 2009) (rejecting preemption of FEHA and IIED claims, but only after considering "whether the conduct alleged implicates the duty of fair representation"). This Court, too, will follow the First Circuit's approach.

Guidry's allegations strike at the core of MEBA's duty of fair representation. He bases his state claims on the union's "delay in processing my work visa" and the hiring of the Boston engineer. See Compl. ¶ 42. Guidry argues that union rules prohibited the Boston engineer from taking the job because Guidry had "accepted an open job," which should have barred others from seeking it; the hiring also allegedly violated the CBA with the shipping company.[2] Id. ¶¶ 12, 15. Finally, he accuses MEBA officials of failing to sufficiently investigate the delay in Guidry's visa application and of failing to "check[] on the computer to see if the job . . . had been filled . . . ." Id. ¶¶ 14, 29-30.

The conduct at issue, then, is the union's effort, or lack of effort, to secure work for Guidry off the coast of Brazil. Guidry reasons that "there is a strong state and federal policy against race discrimination that does not conflict with anything federal law is supposed to protect." Opp'n at 3. Nonetheless, his allegations stem entirely from MEBA's conduct on his behalf. Therefore, the duty of fair representation preempts the FEHA and IIED claims.

Accordingly, the Court GRANTS the Motion to Dismiss the FEHA and IIED claims on this basis.

//
//
//

---

[2] Guidry ignores the fact that the other man applied for the job first. See Compl. ¶¶ 7-11. His statement about the union rules therefore suggest that it was Guidry, not the Boston man, who should have been barred from applying.

5

### 2. LMRA Section 301

Alternatively, MEBA argues that the Court must dismiss Guidry's FEHA and IIED claims because they fall under the broad preemptive sweep of Section 301 of the LMRA. See Mot. at 8.

Generally speaking, the LMRA preempts a state law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." See Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203 (9th Cir. 2007) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988)). On the other hand, if a state law claim involves "nonnegotiable state-law rights . . . independent of any right established by contract" and therefore only tangentially implicate a labor contract, then federal law does not preempt them. Miller v. AT&T Network Sys., 850 F.2d 543, 546 (9th Cir. 1988).

The ultimate question, as this Court has noted to these parties before, is whether the underlying discrimination claim "itself hinges on the interpretation of a labor contract." Guidry v. Marine Eng'rs Beneficial Ass'n, No. 05-03960, 2007 WL 707511, at *4 (N.D. Cal. March 6, 2007).

As discussed above, Guidry lays out a string of alleged missteps in MEBA's efforts to secure him a job aboard the Overseas Cascade. See Compl. ¶¶ 7-36. He then seeks to tie the loop by baldly asserting that the union and shipping company "worked together" to bar his employment when they learned that he was black. Id. ¶ 30. They did so, he alleges, because crew members "did not wish to work with African-American sailors." Id. He chalks up his union's failure to investigate how his placement fell through to "their motive . . . to discriminate against me based on my race." Id. ¶ 36.

Guidry argues that a reasonable person could assume, without looking at the CBA, "that MEBA was doing this weird thing because it wanted to avoid placing me aboard the Overseas Cascade . . . . The same applies to MEBA's failure to investigate my race discrimination claims." Opp'n at 5. But his argument fails because Court cannot know whether what MEBA did was, in fact, "weird," without interpreting the CBA and the union's duty to represent Guidry according to its terms.

6

Because adjudication of the FEHA and IIED claims calls for substantial interpretation of the CBA, Section 301 of the LMRA preempts them both. The Court therefore GRANTS the Motion to Dismiss the state law claims.

### B. Title VII Claim

MEBA next moves to dismiss Guidry's Title VII cause of action for failure to state a claim. Mot. at 10 (citing Fed. R. Civ. P. 12(b)(6)). To withstand such a challenge, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A prima facie claim that a union has violated Title VII requires a plaintiff to show that he or she "was singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under the statute." Beck v. United Food and Commercial Workers Union, Local 99, 506 F.3d 874, 882 (9th Cir. 2007) (citations omitted).

At this stage, however, Guidry does not need to set forth "specific facts establishing a prima facie case of discrimination[.]" See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 (2002). He need only provide a "short and plain statement" sufficient to give the defendant "fair notice" of the basis for the claims. See id. at 514. Under Twombly, of course, the pleaded facts must "nudge [his] claims across the line from conceivable to plausible." See Twombly, 550 U.S. at 570-71.

Accepted as true, Guidry's Complaint sufficiently states that he is a member of a protected class, that he was qualified for the position he sought, and that he did not get it. See e.g., Compl. ¶¶ 1, 9, 12 (describing Guidry's race and showing both that a union official told him of the job, suggesting his fitness for it, and that the union instead hired another man). But the Complaint lacks any facts to reasonably link those assertions to his conclusion that MEBA discriminated against him because of his race. Rather, Guidry largely stakes his Title VII claim on these conclusory allegations:

7

> The delay in processing my work visa, combined with MEBA's filling of the Third Engineer position aboard the Overseas Cascade with a Second Engineer who is not Black (I believe he is Portuguese or Brazilian), were both motivated by racial prejudice – the proffered non-discriminatory reasons were a mere pretext for racial discrimination.
>
> The Actions of MEBA discriminated against me based on my race in violation of Title VII of the Civil Rights Act of 1964, causing me to lose employment income for approximately four months.

Id. ¶¶ 38-39. He additionally asserts that he "believe[s]" that MEBA officials acted as they did because "other personnel on that ship did not wish to work with African-American sailors" and because "their motive was to discriminate against me based on my race." Id. ¶¶ 30, 36.

Guidry asks the Court to take too great a leap. Especially given that the Boston engineer applied for the sought-after position a month before Guidry did, id. ¶ 8, the Complaint does not raise a plausible discrimination claim. Therefore, the Court GRANTS the Motion to Dismiss the Title VII claim. Because Guidry could possibly assert additional facts to create a reasonable inference of discrimination, Guidry may amend his complaint to allege additional facts sufficient to constitute a Title VII claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion, with leave to amend his Complaint as it relates to the Title VII claim. Guidry must file any amended complaint **within thirty (30) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 28, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE